# Supreme Court of Texas

---

No. 24-0613

---

William W. Ruth,

*Petitioner*,

v.

Commission for Lawyer Discipline,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

---

**Argued November 5, 2025**

JUSTICE LEHRMANN delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Devine, Justice Busby, Justice Bland, Justice Young, Justice Sullivan, and Justice Hawkins joined.

JUSTICE HUDDLE filed an opinion concurring in the judgment.

Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer, "[i]n representing a client," from communicating with persons known to be represented by another lawyer about the subject of the representation unless the other lawyer consents or the communication is authorized by law. The issue in this disciplinary proceeding is whether that no-contact rule applies to a lawyer acting

pro se. The court of appeals held that it does and affirmed the trial court's judgment suspending the petitioner from the practice of law for violating the rule. We hold that the rule does not apply to a pro se lawyer and therefore reverse the court of appeals' judgment.

## I. Background

In August 2020, the Commission for Lawyer Discipline initiated a disciplinary proceeding against William Ruth, alleging that Ruth engaged in professional misconduct in the course of representing a plaintiff in a personal injury suit. Ruth opted to represent himself in the disciplinary proceeding, while the Commission was represented by Stephanie Strolle with the Office of the Chief Disciplinary Counsel.

After Ruth included individual Commission members on the electronic service list for two motions he filed, Strolle emailed Ruth, instructing him to stop "improperly communicating directly with Commission members, parties who are represented by counsel." Thereafter, Ruth served Commission members with several more filings and wrote a letter to the former Commission chair requesting that Strolle be recused from the case. He also served Commission members with correspondence addressed to the district judge requesting that certain matters be heard prior to any trial setting, including a deposition demand, a motion for summary judgment, and a motion to disqualify Strolle.

At that point—in December 2021—the head of the Office of the Chief Disciplinary Counsel's San Antonio office emailed Ruth to "again demand" that he "stop contacting members of the Commission in any manner." The email further stated that Ruth's contact with the

Commission members, who were represented by counsel, "is in deliberate violation of the Texas Disciplinary Rules of Professional Conduct." Ruth had no further communication with any Commission members.

In April 2022, while the disciplinary proceeding was still pending,[1] the Commission initiated a second disciplinary proceeding against Ruth premised on his communications with the represented Commission members in the first proceeding.[2] The Commission alleged violations of Texas Disciplinary Rules of Professional Conduct 4.02(a) and 8.04(a)(1). *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (TEX. STATE BAR R. art. X, § 9) (prohibiting a lawyer, "[i]n representing a client," from communicating with knowingly represented persons about the subject of the representation absent the other lawyer's consent or legal authorization); *id.* R. 8.04(a)(1) (prohibiting violations of the disciplinary rules "whether or not such violation occurred in the course of a client–lawyer relationship").

The Commission moved for partial summary judgment, arguing the evidence established as a matter of law that Ruth engaged in professional misconduct. Specifically, the Commission asserted that, by "repeatedly serv[ing] pleadings, motions, and correspondence on

---

[1] In December 2021, the district court granted partial summary judgment for the Commission, finding that Ruth engaged in acts of professional misconduct in violation of various disciplinary rules.

[2] Initially, the Commission alleged additional, unrelated grounds of professional misconduct against Ruth in the second proceeding. However, the Commission abandoned those claims before trial.

individual members of the Commission . . . in attempts to have his opposing counsel removed from the first disciplinary case," Ruth communicated with a government entity he knew to be represented about the subject of the representation in violation of Rules 4.02(a) and 8.04(a)(1). Ruth responded that the summary judgment evidence failed to show that he communicated with Commission members, that they received such communications, or that he knew the members were represented by counsel. The trial court granted the Commission's motion in pertinent part, finding the evidence conclusively established that Ruth "communicated or caused or encouraged another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knew to be represented by another lawyer regarding that subject, without the consent of the other lawyer . . . or being authorized by law to do so."

After holding that Ruth committed professional conduct by violating Rules 4.02(a) and 8.04(a)(1), the trial court held a hearing to determine the proper sanction. The court rendered judgment that Ruth be actively suspended from the practice of law for five years. The court also awarded the Commission attorney's fees and expenses. Ruth appealed.[3]

---

[3] While the appeal was pending, the trial court in the first disciplinary proceeding signed a final judgment suspending Ruth from the practice of law for eighteen months, a period overlapping with the five-year suspension period in this proceeding. The court of appeals affirmed that judgment. *Ruth v. Comm'n for Law. Discipline*, No. 04-23-00122-CV, 2024 WL 3512152 (Tex. App.—San Antonio July 24, 2024, pet. filed). Ruth filed a petition for review, which is pending in this Court.

4

In the court of appeals, Ruth focused on the purely legal argument that the no-contact rule, which restricts lawyer communications "[i]n representing a client," does not apply to a lawyer acting pro se. The court of appeals disagreed and affirmed the trial court's judgment, holding that "a lawyer acting pro se represents himself as a client" and is subject to Rule 4.02. 696 S.W.3d 233, 239–40 (Tex. App.—San Antonio 2024).

We granted Ruth's petition for review.

## II. Analysis

The sole issue presented involves the meaning and application of the Texas Disciplinary Rules of Professional Conduct. Those rules, along with opinions interpreting them, provide disciplinary standards for Texas attorneys. *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT preamble ¶ 7 ("[The disciplinary rules] stat[e] minimum standards of conduct below which no lawyer can fall without being subject to disciplinary action."). In interpreting the disciplinary rules, we apply statutory-construction principles. *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008). We therefore analyze the rule at issue by looking to the plain and common meaning of its words and construing them in the context of the rules as a whole. *See CHCA Woman's Hosp. v. Lidji*, 403 S.W.3d 228, 231–32 (Tex. 2013); *In re Off. of Att'y Gen.*, 456 S.W.3d 153, 155 (Tex. 2015) ("We construe the words of a statute according to their plain meaning and in the context of the statute's surrounding provisions.").

As a general matter, a lawyer must comply with the disciplinary rules regardless of whether he is acting in a representative role. TEX.

5

DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(1) ("A lawyer shall not . . . violate these rules . . . whether or not such violation occurred in the course of a client–lawyer relationship[.]"); *see also id.* PREAMBLE ¶ 4 ("A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others."). For example, the rules place a blanket prohibition on a lawyer's "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation" or "constituting obstruction of justice." *Id.* R. 8.04(a)(3)–(4).

However, some rules are expressly confined to a lawyer's conduct "[i]n representing a client."[4] *E.g.*, *id.* R. 1.01(b), 4.04(a). One of those rules—Rule 4.02, the no-contact rule—is at issue here and states in pertinent part:

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

---

[4] Other rules are impliedly so constrained because they govern specific aspects of the client–lawyer relationship. *See, e.g.*, TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.02 (with certain exceptions, requiring a lawyer to abide by a client's decisions concerning the objectives of representation, whether to accept a settlement offer, and certain criminal matters), 1.05 (governing a lawyer's protection of confidential information of a client or former client), 1.16(a) (governing when a lawyer must decline to represent or terminate representation of a client).

6

*Id.* R. 4.02(a).[5]  Comment 1 to the rule[6] explains that it is "directed at efforts to circumvent the lawyer–client relationship existing between other persons, organizations or entities of government and their respective counsel," extending to communications that, "because of the lawyer's involvement in devising and controlling their content, . . . in substance are between the lawyer and the represented person."  *Id.* R. 4.02 cmt. 1.  Comment 2 confirms that the communication prohibition does not extend to the client, stating that "communication between a lawyer's client and persons, organizations, or entities of government represented by counsel" is not prohibited "as long as the lawyer does not cause or encourage the communication without the consent of the lawyer for the other party."  *Id.* R. 4.02 cmt. 2.

The Commission argues that while a pro se lawyer-litigant is a party to a suit, he is also "representing a client"—himself—and that Rule 4.02 thus applies.  The court of appeals agreed, holding that an attorney who proceeds pro se "functionally occupies the roles of both attorney and client."  696 S.W.3d at 239 (quoting *In re Steele*, 181 N.E.3d 976, 979 (Ind. 2022)).  The court also noted that applying Rule 4.02 to pro se lawyers serves the rule's purpose of "preserv[ing] the integrity of the client–lawyer relationship by protecting the represented party from

---

[5] Rule 4.02(b) places the same constraints on a lawyer's communication with a person the lawyer "knows to be employed or retained for the purpose of conferring with or advising another lawyer about the subject of the representation."  *Id.* R. 4.02(b).

[6] The comments to the disciplinary rules "illustrate or explain applications of the rules, in order to provide guidance for interpreting the rules and for practicing in compliance with the spirit of the rules."  *Id.* PREAMBLE ¶ 10.

the superior knowledge and skill of the opposing lawyer." *Id.* (quoting *In re News Am. Pub., Inc.*, 974 S.W.2d 97, 100 (Tex. App.—San Antonio 1998, orig. proceeding), *mand. granted sub nom. In re Users Sys. Servs., Inc.*, 22 S.W.3d 331 (Tex. 1999)); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02 cmt. 1. Ruth responds that the rule unequivocally does not apply to a party, which includes a party who happens to have a Texas law license.

In some jurisdictions whose disciplinary rules contain a no-contact rule with the same "[i]n representing a client" prefatory language as the Texas rule,[7] the rule itself expressly answers the question of its application to pro se lawyers. For example, New York Disciplinary Rule 4.2(a) is almost identical to Rule 4.02(a) of the Texas Rules, but New York Rule 4.2(c) additionally provides that "[a] lawyer who is acting pro se or is represented by counsel in a matter is subject to paragraph (a), but may communicate with a represented person [with reasonable advance notice to the represented person's counsel], unless otherwise prohibited by law and unless the represented person is not legally competent." N.Y. Rules of Prof Conduct [22 NYCRR 1200.0] rule 4.2(c). And supplementing Rule 4.2(a) of the California disciplinary rules, which again contains the same prefatory language as the Texas rule, is a comment confirming that the rule "does not prohibit a lawyer who is a party to a legal matter from communicating on his or her own behalf with a represented person in that matter." Cal. Rules of Prof.

---

[7] Most jurisdictions have adopted a version of the American Bar Association Model Rules of Professional Conduct, so the rules often use similar language.

8

Conduct R. 4.2 cmt. 3. In Oregon, "[t]he narrowness of [Oregon's similarly worded no-contact] rule was recognized by the Bar and the [Oregon Supreme C]ourt by the 1986 addition . . . of the words: 'This prohibition includes a lawyer representing the lawyer's own interests.'" *In re Mettler*, 748 P.2d 1010, 1012 (Or. 1988) (quoting Or. DR 7-104(A)(1), *superseded by* Ord. Adopting the Or. R. of Pro. Conduct, C.J. Ord. No. 04-44 (Dec. 1, 2024), Or. R. Pro. Conduct R. 4.2 (amended 2026)).

Absent clarifying language in the rule or comments themselves, authorities on the issue diverge, both in Texas and among other jurisdictions. In *Vickery v. Commission for Lawyer Discipline*, the Fourteenth Court of Appeals observed that an attorney representing himself "is necessarily representing a client" and therefore concluded that such an attorney violates the no-contact rule by communicating directly with an opposing, represented party without the requisite consent or authorization. 5 S.W.3d 241, 259–60 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Most jurisdictions to address the issue have held similarly,[8] and the American Bar Association issued a divided formal ethics opinion concluding that the model rule on which Rule 4.02 is based "applies to a pro se lawyer because pro se individuals represent

---

[8] *See, e.g.*, *Steele*, 181 N.E.3d at 980; *In re Hodge*, 407 P.3d 613, 654–55 (Kan. 2017); *Medina Cnty. Bar Ass'n v. Cameron*, 958 N.E.2d 138, 140–41, 141 n.1 (Ohio 2011); *In re Disciplinary Action of Lucas*, 789 N.W.2d 73, 76–77 (N.D. 2010); *In re Disciplinary Proc. Against Haley*, 126 P.3d 1262, 1273 (Wash. 2006); *In re Schaefer*, 25 P.3d 191, 199–200 (Nev. 2001); *In re Segall*, 509 N.E.2d 988, 990 (Ill. 1987); *Sandstrom v. Sandstrom*, 880 P.2d 103, 108–09 (Wyo. 1994).

9

themselves and lawyers are no exception to this principle." ABA COMM. ON ETHICS & PRO. RESP., Formal Op. 22-502, at 1 (2022).

By contrast, the Restatement, while recognizing contrary authority, takes the position that the no-contact rule's prohibition on communication with a represented person does not apply if "the lawyer is a party and represents no other client in the matter." RESTATEMENT (THIRD) OF THE L. GOVERNING LAWS. § 99(1)(b) (A.L.I. 2000); *see also id.* cmt. b ("The anti-contact rule constrains a lawyer who represents another person in the matter."). The Texas Committee on Professional Ethics issued an advisory opinion agreeing with the Restatement and explaining that the Texas disciplinary rules "are based in part on treating clients as separate persons with whom lawyers, also as separate persons, may establish representation relationships." TEX. COMM. ON PROF'L ETHICS, Op. 653, 79 Tex. B.J. 234, 234 (2016). The committee further concluded that, for purposes of applying Rule 4.02, viewing "a lawyer who is a party in a matter . . . as part lawyer and part client with the lawyer part representing the client part in the matter . . . strain[s] the language of the Rule beyond its intended meaning." *Id.* Importantly, however, the committee also affirmed that a pro se lawyer's communications with a represented person "will be subject to other requirements of the Texas Disciplinary Rules" and that the lawyer must therefore avoid communications "that in the circumstances would constitute 'conduct involving dishonesty, fraud, deceit or misrepresentation' in violation of Rule 8.04(a)(3)." *Id.*

We see merit in both positions. A pro se litigant "represents oneself in a court proceeding without the assistance of a lawyer." *Pro se*

10

*litigant*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Pro se, id.* ("[f]or oneself; on one's own behalf; without a lawyer"). When that litigant is a licensed attorney, in one sense he is both lawyer and client, and in another sense he is neither lawyer nor client. *See* ABA COMM. ON ETHICS & PRO. RESP., Formal Op. 22-502, at 7 (dissenting committee members opining that "[s]elf-representation is simply not 'representing a client,' nor will an average or even sophisticated reader of these words equate the two situations"); *see also In re Disciplinary Proc. Against Haley*, 126 P.3d 1262, 1273 (Wash. 2006) (Sanders, J., concurring) ("Lawyers cannot retain themselves any more than pro se litigants can claim legal malpractice or ineffective assistance of counsel.").

As to the rule's purpose of safeguarding the lawyer–client relationship between other persons and their respective counsel, TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02 cmt. 1, we do not disagree with the court of appeals that applying the rule to pro se lawyers serves that purpose, 696 S.W.3d at 239–40. That application is at odds with Comment 2, which clarifies that the prohibition does not extend to communications between a lawyer's client and represented persons. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02 cmt. 2. The comments thus point in opposing directions.

And notwithstanding Comment 1, the Connecticut Supreme Court's decision in *Pinsky v. Statewide Grievance Committee*, 578 A.2d 1075 (Conn. 1990), provides good reason for declining to apply the rule here. The issue in *Pinsky* was whether Connecticut's no-contact rule prohibited a *represented* lawyer-litigant from communicating with the opposing, represented party about the subject of the suit. *Id.* at 1079.

11

In that case, the owner of the building in which Pinsky maintained his law office sought to evict him. *Id.* at 1076. Pinsky, who was represented by counsel in the proceeding, communicated directly with the landlord regarding the eviction, leading the landlord to file a complaint with the grievance committee. *Id.* at 1076–77. The Connecticut Supreme Court held that, because Connecticut's no-contact rule authorizes contact between litigants and "limit[s] the restriction on communications with represented parties to those situations where the attorney is 'representing a client,'" Pinsky did not violate the rule. *Id.* at 1079.

We agree with the court's conclusion in *Pinsky*, as holding otherwise would leave the no-contact rule's prefatory language meaningless. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). If the no-contact rule authorizes a *represented* litigant who happens to be a lawyer to communicate with another represented person, we doubt there is a legitimate basis to hold that it prohibits a *pro se* litigant who happens to be a lawyer from doing so,[9] at least absent more explicit direction in the rule to that effect.

An illustration in the Restatement, which as noted takes the position that "[a] lawyer representing his or her own interests pro se may communicate with an opposing represented nonclient on the same basis as other principals," modifies the *Pinsky* facts to highlight the triviality of the distinction:

---

[9] The concurrence does not address this perplexing dichotomy.

12

> Lawyer A, who rents law-office space from Landlord, receives a letter from Lawyer B, representing Landlord, directing Lawyer A to vacate by a certain date. Lawyer A telephones Landlord without the prior consent of Lawyer B and insists to Landlord that the lease prohibits the eviction. Lawyer A has not violated the rule of this Section.

RESTATEMENT (THIRD) OF THE L. GOVERNING LAWS. § 99 cmt. e. Under the court of appeals' and the concurrence's reasoning, Lawyer A was "representing a client" and thus violated the Texas no-contact rule. But if the illustration is tweaked to say that Lawyer A "hires an attorney to represent him in the dispute and then telephones Landlord without the prior consent of Lawyer B," the lawyer cannot have violated the rule, even though the rule's purpose would arguably be better served by concluding that he did.

Given the rule's lack of express language regarding its applicability to pro se lawyers, we are hesitant to subject such lawyers to disciplinary action for violating it.[10] We have similarly subjected uncertain penal statutes, including those that impose civil penalties, to

---

[10] According to the concurrence, the rule's context supports applying the rule to lawyers acting pro se. *Post* at 6–7 (Huddle, J., concurring). The concurrence points to Rule 3.08(a)(4), which prohibits a lawyer from working on a case "if the lawyer knows or believes that the lawyer is or may be a witness . . . unless . . . the lawyer is a party to the action and is appearing pro se." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a)(4). In the concurrence's view, that rule's exception for pro se lawyers signals that they are within the rules' scope unless expressly excepted. *Post* at 6. Importantly, however, Rule 3.08 does not contain the prefatory "in representing a client" language that is at the heart of this case. As discussed, absent that limiting language, a lawyer must comply with the disciplinary rules regardless of whether he is acting in a representative role. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(1). The express exception is therefore necessary because the rule would otherwise necessarily apply to a lawyer acting pro se.

strict construction. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718–19 (Tex. 2024) (citing *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006)). This rule of lenity, which "applies only to the extent the statute at issue is unclear or ambiguous," is motivated by the principle that persons must have "sufficient notice of the conduct that will subject them to statutory penalties." *Id.* at 719–20; *see also id.* at 720 (noting our previous recognition "that enforcing penalties exacted through ambiguous penal statutes risks denying citizens their constitutionally protected right to 'due process of law, in violation of the principles of right'" (quoting *Mo., Kan. & Tex. Ry. Co. of Tex. v. State*, 100 S.W. 766, 767 (Tex. 1907))). In applying the rule of lenity, we have explained that "the degree of clarity required may vary in proportion to the severity of the penalty a statute imposes" and that "'the more severe the penalty, . . . the more rigid will be the construction of its provisions.'" *Id.* (quoting *Mo., Kan. & Tex. Ry.*, 100 S.W. at 767).

Unquestionably, a disciplinary proceeding against a licensed attorney is "highly penal" as it can result in suspension or even disbarment, depriving the person "of the right to pursue and reap the profits of a profession, to fit himself for which he may have spent years of toil, and upon which he is dependent for a livelihood." *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 493 (Tex. 2024) (quoting *Scott v. State*, 24 S.W. 789, 789 (Tex. 1894)). To be sure, the disciplinary rules play a vital role in ensuring that lawyers "maintain the highest standards of ethical conduct" and that "the law will continue to be a noble profession." TEX. DISCIPLINARY RULES PROF'L CONDUCT PREAMBLE ¶¶ 1, 9. But given the potentially severe consequences of violating those

rules, the Commission alleging such a violation must show that the lawyer "engaged in conduct that falls 'clearly within the [applicable rule's] terms.'" *See Malouf*, 694 S.W.3d at 721 (quoting *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943)). We cannot conclude that a pro se lawyer's communication with a represented person about the subject of the representation falls clearly within Rule 4.02's terms. *See Haley*, 126 P.3d at 1275 (Sanders, J., concurring) ("Application of the rule of lenity [to Washington's no-contact rule] . . . demands that we adopt the stricter, narrower construction, excluding self-represented lawyers.").

As a matter of policy, perhaps Rule 4.02 *should* apply to a pro se lawyer or even to a represented lawyer. Perhaps the rule should be amended to clearly say so. But it does not clearly say so now, and "we do not revise our rules by opinion." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). Accordingly, Rule 4.02 did not prohibit Ruth from communicating directly with members of the Commission, which was represented by counsel, about the disciplinary proceeding.

We emphasize that our holding—a disciplinary rule governing a lawyer's conduct "[i]n representing a client" does not extend to a pro se lawyer—does not give a lawyer carte blanche to engage in unethical conduct or otherwise abuse the litigation process. As discussed, most of the disciplinary rules are not so cabined, including Rule 8.04's blanket prohibition against "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(3). As another example, Rule 3.01 provides that "[a]

15

lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous." *Id.* R. 3.01. A frivolous filing or assertion is one that, among other things, is "made primarily for the purpose of harassing or maliciously injuring a person" or "contains knowingly false statements of fact." *Id.* R. 3.01 cmts. 2–3;[11] *see also, e.g., id.* R. 3.02 ("In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter."), 3.03 (describing a lawyer's duty of candor toward the tribunal). We need not exhaustively quote the disciplinary rules that are not limited to a lawyer's representative conduct; suffice it to say, they are numerous and hold lawyers accountable for their professional misconduct.

### III. Conclusion

We hold that Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct, which prohibits a lawyer from engaging in conduct "[i]n representing a client," does not apply to a pro se lawyer. The court of appeals erred in holding otherwise. Accordingly, we reverse

---

[11] The rule also confirms that a lawyer must conform to "any more stringent applicable rule of practice or procedure." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.01 cmt. 4.

the court of appeals' judgment and dismiss the disciplinary proceeding against Ruth.

_____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 12, 2026